UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **CALVIN WAYNE HORTON** | **CIVIL ACTION NO. 16-262-P** |
| **VERSUS** | **CHIEF JUDGE HICKS** |
| **JAMES LEBLANC, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Calvin Wayne Horton ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on February 25, 2016. Plaintiff claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names James LeBlanc, the Administration of the Department of Public Safety and Corrections, Jerry Goodwin, James Aronald, Michelle Dauzat, Angie Huff, Deputy Rachel, L. Nail, Lt. Col. Hamton, Lt. Col. Cantrell, Cpt. White, Lt. Jones, Sgt. Rimbar, Sgt. Kliber, Dr. Hearn, Dr. Fuller, John Martin, John Doe, and Sgt. Selpolvo as defendants.

Plaintiff claims Defendants have committed defamation of character, malfeasance in office, obstruction of justice, misappropriation of an official duty, deliberate

indifference, retaliation, discrimination, cruel and unusual punishment, medical malpractice and negligence, unlawful sabotage, and exploitation.

Plaintiff claims he suffered gross neglect by James LeBlanc and the staff at David Wade Correctional Center. He claims Warden Jerry Goodwin and his subordinates are responsible for gross medical negligence. Plaintiff claims he suffers from a chronic medical condition caused by overexertion during an exercise routine which caused his brain to become chemically imbalanced. He claims his adrenalin was uncontrolled and he was injured in the worst possible way. Plaintiff claims that he also tore a ligament in his right shoulder and injured his left kneecap while exercising. He claims he suffers from deterioration of his muscles and muscle contractions associated with severe nerve complications at the sound of sharp, acute noises. Plaintiff claims he also suffers from fatigue, equilibrium imbalance, heart flutters, severe abdominal spasms and cramps, irregular breathing, and symptoms of stroke and heart attack. He admits his symptoms are not documented by a physician [Doc. 10, p.5]. He claims he cannot determine with accuracy his exact medical condition.

Plaintiff claims Dr. Hearn refused to acknowledge that he had a chronic, debilitating ailment while he was housed in the administrative segregation cell blocks. He admits that he continued to receive his high blood pressure medication Clonidine and fluid pills while housed in the administrative segregation blocks. He also admits that he received a routine clinic check-up every three months. He complains that he did not receive any other treatment including extra food portions for his muscle deterioration and housing in another

location. He also claims he should have received surgical intervention or constructive medical advice for the refurbishment of his ruptured right lower quadricep muscle.

Plaintiff claims that in April of 2015, he complained to Warden Jerry Goodwin, the Louisiana Department of Corrections and Public Safety, James Arnold, Dr. Hearn, Dr. Fuller, Warden Michelle, John Doe, Deputy Rachel, Lt. Col. Cantrell, Col. Lonnie Nail, Lt. Col. Hamilton, and Lt. Jones. He claims they did not intervene on his behalf.

Plaintiff claims that on August 24, 2015, he was falsely accused of an offense by a correctional officer. He claims that on September 2, 2015, he was sanctioned to administrative segregation cell blocks. He claims the inmate counsel discriminated against him during the disciplinary court proceedings because he failed to adequately investigate his alibi and file a motion. Plaintiff claims he has been unfairly housed in administrative segregation cell blocks since August 24, 2015.

Plaintiff claims that on December 10, 2015, Sgt. Selpolvada entered his tier and made sharp penetrating sounds which pierced his person to the core. Plaintiff claims he got the attention of Sgt. Selpolvada as he walked past his cell and asked him to stop making the noise. He claims Sgt. Selpolvada ignored him. Plaintiff claims he became annoyed with the noise and asked Sgt. Selpolvada to stop making noise because he was partially handicapped, and the excessive noise detrimentally affected him. He claims Sgt. Selpolvada replied that he did not care and continued pushing the cart up the tier.

Plaintiff claims he then asked Sgt. Kliber to make a request for an emergency sick call. He claims that 20 minutes later, Sgt. Kliber entered the tier and he asked him who needed to make a request for an emergency sick call. He claims he informed Sgt. Kliber

that he was having severe chest pains, shortness of breath, abdominal pains and cramps, abnormal breathing, dizziness, and fainting symptoms. Plaintiff claims that 20 minutes later, Sgt. Kliber entered the tier again and he requested information from him regarding an emergency sick call. He claims Sgt. Kliber obnoxiously responded that he did not take orders. Plaintiff claims that 15 minutes later, Sgt. Kliber brought him a sick call form. He claims Sgt. Kliber read the emergency sick call request and argued with him about its contents.

Plaintiff claims that five minutes later, Sgt. Selpolvada returned to his cell and slammed down ARP forms on his tray hatch. He claims Sgt. Selpolvada called him a racial slur and told him to spell his name correctly next time.

Plaintiff claims that 30 minutes later, he asked Sgt. Kliber for the fourth time if he was going to see a doctor, a nurse, or Captain White. He claims Sgt. Kliber informed him that his sick call request had been given to Captain White. Plaintiff claims he never saw anyone from the medical department on that day.

Plaintiff claims that on January 6, 2016, Sgt. Selpolvada caused him to suffer needlessly. He claims he had three grievances pending against Sgt. Selpolvada in the administrative remedy procedure. Plaintiff claims he informed Sgt. Blunt that he wanted to make an emergency sick call. He claims that approximately 45 minutes later, nurse John Martin came to his cell. Plaintiff claims he was having convulsions and breathing heavily. He claims he also had severe chest pains when his breathing slowed. Plaintiff claims he told Nurse Martin that he had pain in his right chest and the symptoms were the same as when he had his first stroke several years ago. He claims Nurse Martin checked his vital

signs. Plaintiff claims his bottom blood pressure number was more than 100. He claims Nurse Martin stood in front of his cell and visually observed him to ensure that he was not having a stroke. He claims Nurse Martin had him lift his arms in different positions and told him that his facial features appeared normal. He claims Nurse Martin recommended that he relax and slow his breathing. He claims Nurse Martin also told him to take his blood pressure medication at the routine pill call.

Plaintiff claims he spoke to Nurse Martin about his constant, loud whistling. He claims he has had approximately eight prior encounters with Nurse Martin since August 26, 2015, regarding the same medical issues. He claims Nurse Martin ridiculed him and spoke loud enough for his cell-mate and other inmates to hear him. He claims the other inmates on his tier then began to laugh, chant, and whistle loudly.

Plaintiff admits that in January of 2016, he was escorted to the infirmary. He claims Nurse Jeffery performed a general medical evaluation of him. He claims his temperature and blood pressure were checked. Plaintiff claims he mentioned that his right foot was black because of poor blood circulation. He claims Nurse Jeffery examined his ears and confirmed that he had an ear infection. He claims the ear infection was not treated.

Plaintiff provides documentation that he made a routine sick call on January 11 and 12 of 2016 [Doc. 10, pp.24, 25].

Plaintiff claims that in February of 2016, he made a sick call request regarding his aching eardrums. He claims Nurse Martin and a Sergeant came to his cell. He claims Nurse Martin told him he did not have an ear infection. He claims his requests for peroxide to flush his ears was denied.

As relief, Plaintiff seeks declaratory relief, nominal, compensatory, punitive, and monetary damages, attorney fees, and any other relief that is just and proper.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims he was denied proper treatment for his undiagnosed chronic medical condition.  He claims Dr. Hearn refused to acknowledge that he has a chronic, debilitating ailment.  Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994).  It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976).  Further, the plaintiff must establish that the defendants possessed a culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84.  A delay in medical

care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff admits that he received a routine clinic check-up every three months. Plaintiff admits that he received Clonidine for his high blood pressure and fluid pills. Plaintiff admits that on January 6, 2016, Nurse Martin responded to his emergency sick call and checked his vital signs. He further admits that Nurse Martin observed him for signs of a stroke. He admits that since August 25, 2015, he had approximately eight encounters with Nurse Martin regarding the same medical issues. Plaintiff admits that in January of 2016, he was escorted to the infirmary and Nurse Jeffery performed a general medical evaluation of him and checked his temperature and blood pressure. Plaintiff provides documentation that he made routine sick calls on January 11

and 12, 2016. He admits that he was seen in the infirmary in February of 2016 regarding his eardrums.

Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Plaintiff does not allege how the alleged delay in receiving medical treatment on December 10, 2015 was based on deliberate indifference. He does not claim that he suffered substantial harm because of a delay in medical treatment.

Plaintiff disagrees with the treatment Defendants provided him. He claims that his December 10, 2015 sick call request should have been treated as an emergency sick call. He claims he should have received treatment including extra food portions for his muscle deterioration. He also claims he should have been housed in a different location. He claims he should have received surgical intervention or constructive medical advice for the refurbishment of his ruptured right lower quadricep muscle. Plaintiff also claims that in January of 2016 he should have received treatment for an ear infection. Plaintiff claims that in February of 2016 he should have been given peroxide to flush his ears even though Nurse Martin found he had no ear infection.

As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474

U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992). Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**False Disciplinary Report**

Plaintiff claims that on August 24, 2015, a correctional officer falsely accused him of an offense. A plaintiff does not have a constitutional right to be free from false disciplinary reports. Prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986). Accordingly, Plaintiff false disciplinary report claim should be dismissed with prejudice as frivolous.

**Due Process in the Disciplinary Process**

Plaintiff claims that on September 2, 2015, he was sanctioned to administrative segregation cell blocks. He claims inmate counsel failed to adequately investigate his alibi and file a motion. To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth

Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431.

Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff in the instant case does not allege that the disciplinary action affected the duration of his sentence. To the contrary, Plaintiff's allegations concern his sanction of confinement in administrative segregation cell blocks which is far from "extraordinary." This court finds that under Sandin, Orellana and Madison, a sanction of administrative segregation cell blocks does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns. Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Classification**

Plaintiff complains he was unfairly housed in the administrative segregation cell blocks. This is not a claim that this court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Verbal Threats**

Plaintiff claims Nurse Martin ridiculed him when he spoke to him about his constant loud whistling. Such a claim fails to raise a federal constitutional claim. A plaintiff can successfully invoke § 1983 only when his federal statutory or constitutional rights have been violated. The Fifth Circuit has held that verbal abuse or harassment by a prison guard does not amount to an Eighth Amendment violation. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.1997) (citing Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir.1993)). The "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." Robertson v. Plano City of Texas, 70 F.3d 21, 24 (5th Cir.1995). See Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir.1993) (holding that claims of verbal abuse and harassment are not actionable under § 1983). Accordingly, Plaintiff's claims regarding verbal threats should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 7th day of February 2019.



Mark L. Hornsby
U.S. Magistrate Judge